LOUISE M. GETCHELL vs. ELBRIDGE A. ATHERTON.

Penobscot.    Opinion July 8, 1908.

*Deed.   Description.   Ambiguity.*

1.   When upon applying to the surface of the earth the language used in a deed to describe the land conveyed, an ambiguity in the language is revealed, the court, in order to determine the ambiguity, may receive and consider evidence of the situation and the circumstances and of the acts of the parties previous and subsequent to the conveyance.

2.   The owner of a double tenement conveyed one tenement by a deed describing it as "the northerly tenement," and describing the dividing line as "running a westerly course by the partitions as they now stand, etc." At the westerly end of the building were two partitions, both running westerly and enclosing between them a small yard.   *Held:*  That a latent ambiguity was revealed as to which of these two partitions was the one intended by the parties to the deed.

3.   It appeared from the evidence that the small yard could be entered only from the southern tenement, that it had been used before and after the conveyance almost exclusively by the tenants of the southern tenement as a part of that tenement, and that the southern tenement could have no other yard, while the northern tenement had ample room for a yard.   *Held:* That in the conveyance of the northern tenement the parties intended the northern of the two partitions and that the yard south of it was not conveyed.

On report.   Judgment for plaintiff.

Trespass quare clausum fregit.   Writ dated September 10, 1907. The declaration in the plaintiff's writ was as follows :

"In a plea of trespass, for that the said defendant, at said Bangor, on the first day of August, A. D. 1907, with force and arms broke and entered the plaintiff's close in said Bangor, and then and there dug up and subverted the soil and earth, and then and there caused to be put, placed and erected a wooden building in and upon the said close, and kept and continued the said wooden building so there put, placed and erected, without the leave or license and against the will of the said plaintiff, for a long space of time to wit, from the said first day of August, A. D. 1907, hitherto ; and thereby and therewith, during all the time aforesaid, greatly

incumbered the said close, and hindered the said plaintiff from having the use, benefit and enjoyment thereof in so large and ample a manner as she might and otherwise would have done. And other wrongs to the said plaintiff the said defendant then and there did, against the peace of the State, and to the damage of said plaintiff (as she says) the sum of three hundred dollars."

Plea, the general issue, with brief statement "That the premises described in the writ and declaration of the plaintiff are not the property of the said plaintiff, but is now and was at the date of the plaintiff's writ and prior thereto the property and freehold of the said defendant; and the defendant says that he is not guilty of the acts of trespass complained of in said writ and declaration of the plaintiff."

Tried at the January term, 1908, Supreme Judicial Court, Penobscot County. At the conclusion of the evidence, the case was reported to the Law Court "for determination upon so much of the evidence as would be legally admissible. If judgment be for the plaintiff, damages to be awarded to be ten dollars and costs."

All the material facts are stated in the opinion.

*A. J. Merrill*, for plaintiff.

*P. H. Gillin*, for defendant.

SITTING : EMERY, C. J., SAVAGE, PEABODY, CORNISH, KING, BIRD, JJ.

EMERY, C. J. The question is which party has title to a small open space or yard, 12 x 21 feet in extent, in the rear of a double tenement house in Bangor bounded on the east by French street. The title to the whole house and lot including both tenements was in the same person from 1870 to Dec. 30, 1890, though the occupants of the different tenements were different persons. In 1890, Dec. 30, the owner of the whole property divided it by granting the northerly tenement with the following description. "Beginning at a point on the west line of French Street between the front doors and running a westerly course by the partitions as they now stand to the west line of land described in a deed recorded in the Penobscot

Registry of Deeds, Vol. 386, Page 379. Meaning to convey the land north of the partitions, being the northerly tenement, and as a part of the consideration the partitions are to remain as they now are between said tenements." The defendant's title to the northerly tenement is derived from this deed while the plaintiff owns the southerly tenement and the question is thus narrowed to this, viz: Is the small yard in the rear included in the description in the deed?

In applying this description to the premises as they were at the date of the deed we find they were as indicated upon the plan here sketched from the surveyor's plan in the case, though not to scale.

The parties agree that the division line in the deed starts from the point A, between the doors on French street and runs west by the main partition to the point, B, where it meets a north and south

partition and then runs north by that partition to the point C. The defendant contends that from the point C the line runs west again by the partition C E. This would include the yard in the deed of the northerly tenement owned by him. The plaintiff contends that the line from the point C continues to run north by the partition C D, and then west again by the partition D F. This would leave the yard attached to the southern tenement owned by her.

A latent ambiguity is disclosed. There were two partitions in the back part of the tenements with the yard between. The language of the deed does not in terms distinguish between them. It does not specify the dividing partition as north or south partition, nor as first or second partition, nor in any other way. It uses the plural, "partitions." We are thus compelled to resort, as we may lawfully do, to evidence of the whole situation and surroundings and as to the use or non use of the yard by the occupants of each tenement before and after the division of the title, in order to ascertain, if possible, which of the two partitions is to be taken as that referred to in the deed.

In the southern partition was and is a door opening into the yard from the southern tenement while there was and is no door from the northern tenement into the yard. The yard was regularly and without interruption used by the occupants of the southern tenement as a part of that tenement both before and after the division of the title in 1890 until after the defendant took possession of the northern tenement in 1899. The yard was used by the occupants of the northern tenement only for putting on and taking off outside windows on that side of their house, except an isolated instance when some beans were planted in it next to the wall of the northern tenement. Further it appears that the southern tenement of the house is so near the lot lines, only eight feet distant, that it has no other room for yard purposes, while there appears to have been ample room for yard purposes north of the north tenement next to French street.

From these proven facts we think it clear that the parties to the division deed of Dec. 30, 1890, and their successors in title down

to the defendant in 1899 understood the yard to be a part of the southern tenement, and that the northern partition, excluding the yard from the grant of the northern tenement and leaving it a part of the southern tenement, was the partition referred to and named in the deed as the dividing partition at that place.

It is true that in case of doubts in grants the presumption is against the grantor, but that presumption can be overcome by other proper considerations and we think it is in this case.

The defendant urges that when he purchased the northern tenement he was assured by the real estate agent that the yard went with the northern tenement and that he purchased with that understanding, but of course that was merely the opinion of the agent and is not to be considered.

It follows that the title to the yard is in the plaintiff and according to the stipulation of the parties, judgment must be for the plaintiff with damages assessed at ten dollars.

*So ordered.*